IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 1:20-cr-185 |
| | ) | |
| v. | ) | Sentencing Date: November 13, 2020 |
| | ) | |
| TARIK JAAFAR, | ) | Hon. Claude M. Hilton |
| | ) | |
| Defendant | ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, through its attorneys, G. Zachary Terwilliger, United States Attorney; Kimberly Shartar and William Fitzpatrick, Assistant United States Attorneys, in accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, Guidelines Manual ("Guidelines" or "U.S.S.G."), files this Position of the United States with Respect to Sentencing of Defendant Tarik Jaafar (hereinafter "the defendant" or "Jaafar").

The United States submits that the Probation Officer correctly calculated the Sentencing Guidelines level to be 17, which results in a 24 to 30 months advisory Guidelines range. Based on the factors set forth in 18 U.S.C. § 3553(a), the United States requests that this Court impose a sentence of 24 months, three years of supervised release, order restitution in the amount of $220,573, and order forfeiture of certain bank accounts and a portion of the cash seized at the defendant's arrest as detailed in the agreed upon forfeiture order.

1

I.     BACKGROUND[1]

The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses through a program referred to as the Paycheck Protection Program ("PPP").  A PPP loan application must be processed by a participating financial institution (the lender).  If a PPP loan application is approved, the participating financial institution funds the PPP loan using its own monies, which are 100% guaranteed by the Small Business Administration ("SBA").  PPP loans are obtained by submitting an application to a financial institution along with supporting documentation as to the business's payroll expenses.  PPP loan proceeds must be used by the business for certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities.  The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time.  The CARES Act also authorizes the SBA to provide Economic Injury Disaster Loans ("EIDL") to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.  Pursuant to the CARES Act, the SBA is authorized to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL.  Unlike PPP loan applications, EIDL applications are submitted directly to the SBA.  EIDL funds can be used for payroll expenses,

---

[1]The PSR and the Statement of Facts ("SoF") signed by the defendant, Dkt. 36, adequately set forth the offense conduct in this case.

2

sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

Between April 13, 2020, and May 6, 2020, the defendant, Tarik Jaafar, and his wife and co-conspirator, Monika Magdalena Jaworska ("Jaworska"), submitted eighteen PPP loan applications for four businesses, which were merely shell companies, to twelve financial institutions. Of the approximately $6.6 million sought, the financial institutions disbursed approximately $1.4 million. Additionally, between April 7, 2020, and April 15, 2020, the defendant and Jaworska submitted two EIDL loan applications for two of the shell entities to the SBA. As a result, one $10,000 EIDL advance was obtained from the SBA.[2]

On May 19, 2020, law enforcement visited the home addresses of record, located in northern Virginia, for the defendant and Jaworska. At one of the addresses, the law enforcement officer could tell people were present, however no one answered the door when he knocked. Nonetheless, he left his card at the location. As a result of this visit, the United States made contact with Jaafar's first defense attorney. Counsel for the United States informed the defendant's counsel that the defendant was a target of the investigation. Counsel for the United States had several follow-up conversations with defense counsel in which counsel was informed that Jaworska was also a target of the investigation. Despite being told by counsel for the United States on June 9, 2020, during a planned in-person reverse proffer, that he was a target of the investigation and despite making plans for yet another in-person reverse proffer for the beginning of the week of June 22, 2020, on Wednesday June 17, 2020, the defendant purchased one-way

---

[2] However, as set forth below, the defendant and his wife were only able to withdraw approximately $30,000 of the amounts disbursed.

3

tickets for himself, Jaworska, and their two children, to fly from New York to Poland on Saturday, June 20, 2020.

The defendant was arrested on or about Saturday, June 20, 2020, on a criminal complaint charging him with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. Specifically, the defendant and Jaworska were arrested in the parking garage across from Terminal 7 of John F. Kennedy International ("JFK") airport, where Polish Airlines is located, with 18 bags. The defendant had both his United States and Moroccan passports on his person. Ms. Jaworska had her United States and Polish passports on her person. In the various bags, law enforcement found $49,875.65 in cash, approximately 14 cell phones, and multiple laptops. On August 25, 2020, the defendant pleaded guilty to one count of conspiracy to defraud the United States and to defraud various financial institutions in violation of 18 U.S.C. § 371. He has been in custody since his arrest in New York.

## II.     THE APPROPRIATE GUIDELINE RANGE

As this Court is aware, following the Supreme Court's decision in *United States v. Booker*, the Sentencing Guidelines are now advisory. 543 U.S. 220, 264 (2005). "In the wake of *Booker* . . . the discretion of sentencing court is no longer bound by the range prescribed by the guidelines. Nevertheless, a sentencing court is still required to 'consult [the] Guidelines and take them into account when sentencing.'" *United States v. Hughes,* 401 F.3d 540, 546 (4th Cir. 2005) (quoting *Booker,* 543 U.S. at 264). In fact, the Fourth Circuit has noted that "a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines." *United States v. Hughes,* 401 F.3d 540, 546 (4th Cir. 2005). Thus, "sentencing

4

courts are not left with unguided and unbounded sentencing discretion." *United States v. Green,* 436 F.3d 449, 455 (4th Cir. 2006).

Here, the United States agrees that the appropriate Guidelines range with respect to incarceration is 24 to 30 months. The total offense level of 17 results from a base offense level of 6, increased by 14 levels for the corresponding to loss of over $550,000 but less than $1,500,000,[3] and a 3 level reduction for the defendant's acceptance of responsibility and timely notification to the United States of his intention to plead guilty.[4] The United States asks this Court to adopt the PSR's findings and advisory Guidelines range.

### III. THE FACTORS SET FORTH IN SECTION 3553(A) AND RECOMMENDED SENTENCE

After calculating the appropriate guidelines range, "the court must 'determine whether a sentence within that range . . . serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006) (quoting *Green*, 436 F.3d at 455). Those factors include the nature of the offenses, the characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offense, afford deterrence, protect the public, and provide the defendant with

---

[3] While the defendant sought approximately $6.4 million in loans, the PPP loan program allows for individuals and businesses to seek multiple PPP loans from various lenders at the same time. However, once a loan is funded, the other applications must be withdrawn. The investigating agents found that the defendant did not seek additional PPP loans for an entity once the entity had already received a PPP loan. As such, the government agreed to limit the loss to the $1.4 disbursed by the lenders.

[4] As noted here, the PSR includes a three-level decrease for acceptance of responsibility. In this respect, the United States agrees that the defendant qualifies, pursuant to U.S.S.G. § 3E1.1(a), for a two-level reduction. In addition, the defendant timely notified the United States of his intention to plead guilty, thus permitting the United States to avoid preparing for trial and to allocate its resources more efficiently. Accordingly, the United States hereby moves, pursuant to § 3E1.1(b), to decrease the defendant's offense level by one additional level.

needed educational or other training. 18 U.S.C. § 3553(a). The Court need not weigh the factors equally, but must consider each of them. *United States v. Fowler,* 948 F.3d 663, 674 (4th Cir. 2020).

The defendant is a smart and business savvy individual. He earned a PhD in Economic in France from the University of Strasbourg. Dkt. 58 at ¶83. He is fluent in five languages. *Id*. at ¶85. From 2001 until June of 2018, he was employed in banking by some of the most well-known banks in the country including: Citibank, Sun Trust, and Lehman Brothers. *Id.* at ¶86-91. He made a significant salary, over $200,000, when last employed. *Id.* Yet, instead of earning income through gainful employment he chose to use his banking knowledge to commit the instant crime of defrauding multiple financial institutions and the United States through submitting false loan applications.

The defendant and his wife took advantage of two special programs meant for American businesses struggling amidst unprecedented economic disruption due to the COVID-19 pandemic. Despite not having operating businesses, they applied for PPP and EIDL funds. These were not one off mistakes, instead the defendant, along with his wife, applied for <u>eighteen</u> PPP loans from twelve financial institutions and filed two EIDL applications with the SBA. The PPP loan applications included fake employment tax returns and payroll documents which claimed the business had a number of employees. The defendant and his wife sent numerous emails to the lenders and participated in phone calls with lenders so as to follow up on the applications and to plead for the funds all under the guise of their supposed businesses' needs. These acts exploited the fact that the PPP program was designed to release funds as quickly as possible in order to provide a life-line to businesses across the country.

Because of early detection of their crimes by law enforcement, the defendant and his wife did not enjoy the use of the fraudulently obtained funds. Within a mere four to five weeks of obtaining the funds, law enforcement knocked on their door. The banks later froze the fraudulently obtained funds. The defendant was only able to withdraw approximately $30,000 in cash from the fraud proceeds and some of the funds went to various banking fees. Notwithstanding law enforcements quick actions, the funds likely would have disappeared. And if not for law enforcement learning of their potential flight, the defendant and his wife would be oversees never likely to face the consequences of their crime. While the Guidelines do not account for the flight, because there were no protective barriers in place limiting the defendant's travel, the defendant's flight is an important fact that should be taken into account under the 3553(a) factors when determining his sentence.

The sentence in this case is also likely to have some deterrent effect on other prospective white-collar criminals. The COVID-19 pandemic is not over. The PPP loan program is coming up on important next step — loan forgiveness. In order for the loans to be forgiven, businesses will certify that they used the funds for their intended purpose — for payroll, rent, and utilities. News of PPP loan fraud will likely reach others who may apply for these loans in the future or may have to certify their own PPP loan for forgiveness. As such, the sentence that the defendant receives may serve as a warning to others to not commit a similar crime.

Despite the above, at the end of the day the defendant only withdrew approximately $30,000, which was later recovered from the defendants' bags at their arrest. While still not justified, it appears that he did not intend to the use the funds for lavish spending, but instead to support his family. Because the funds have been recovered, along with the fact that the defendant

7

took responsibility for his actions by pleading guilty early, the government suggests a sentence at the low end of the Guidelines — a term of 24 months.[5]

## IV.  FORFEITURE AND RESTITUTION

While some of the funds were returned by the banks, which were holding fraud proceeds, to the lenders, the lenders have not been made whole.  As result there are fraud proceeds in bank accounts controlled by the defendant and his wife that must be forfeited and there is also outstanding restitution.

Pursuant to the plea agreement, Dkt. 35 at ¶10, the defendant and the government have agreed to the attached consent forfeiture order which includes forfeiture totaling $220,573. Ex. 1.  Further, pursuant to the plea agreement, Defendant has agreed to pay mandatory restitution pursuant to 18 U.S.C. §3663A(c)(1)-(c)(2).  Dkt. 35 at ¶7 and 9.  Attached is the government's proposed restitution order for restitution totaling $220,573.  Ex. 2.  The United States understands that while the defendant agrees to the amount of restitution, he disagrees with some of the terms in the restitution order.

## **CONCLUSION**

For the reasons stated, the United States respectfully requests this court to sentence Tarik Jaafar to a period of incarceration of 24 months and 3 years of supervised release.  Such a sentence is reasonable and accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

---

[5] The United States will be asking the court to allow Ms. Jaworska to start her sentence after Mr. Jaafar serves his term so that their children are not placed in foster care during the pandemic.

Finally, the government requests that the court enter the agreed upon consent forfeiture order and the Government's proposed order restitution.

                                                                                             G. Zachary Terwilliger
                                                                                              United States Attorney

                                                                                              /s/
                                                                                            Kimberly Shartar
                                                                                            William Fitzpatrick
                                                                                            Assistant United States Attorneys
                                                                                            2100 Jamieson Avenue
                                                                                            Alexandria, VA 22314
                                                                                            (703) 299-3700

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 6, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of that electronic filing (NEF) to all counsel of record:

      By:      /s/
      Kimberly Shartar
      Assistant United States Attorney
      United States Attorney's Office
      Justin W. Williams U.S. Attorney's Building
      2100 Jamieson Avenue
      Alexandria, VA 22314
      Telephone: 703-299-3700
      Email: kimberly.m.shartar@usdoj.gov